UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                            )
                                            )
KIMBERLY THEIDON,                           )
                                            )
          Plaintiff,                        )
                                            )
     v.                                     ) Civ. Action No. 15-cv-10809-LTS
                                            )
                                            )
HARVARD UNIVERSITY, and the                 )
PRESIDENT AND FELLOWS OF                    )
HARVARD COLLEGE,                            )
                                            )
          Defendants.                       )
                                            )
_____)

ORDER ON DEFENDANT'S MOTION FOR PROTECTIVE ORDER AND
PLAINTIFF'S MOTION TO COMPEL (DOC. NOS. 28, 31)

February 4, 2016

SOROKIN, J.

I.  INTRODUCTION

The plaintiff Kimberly Theidon ("Theidon") brings this action against Harvard University and the President and Fellows of Harvard College (collectively, "Harvard"). Theidon, formerly an Anthropology professor at Harvard, alleges that Harvard denied her tenure in 2013 because she is a woman and in retaliation for comments she made regarding Harvard's response to Title IX issues on campus. Doc. No. 1. Specifically, Theidon alleges sex discrimination in violation of Title VII of the Civil Rights Act and Mass. Gen. L. c. 151B and retaliation in violation of Title IX of the Education Amendments of 1972 and Mass. Gen L. c. 151B. Id. Before the Court are two motions. Theidon moves to compel Harvard's production of (1) certain electronically stored information ("ESI") in its native

format without any process to eliminate duplicates; and (2) any ESI associated with eight custodians identified by Theidon.  Doc. No. 31.  Harvard moves for a protective order aimed at maintaining the confidentiality of certain individuals involved or discussed in the course of Theidon's tenure review.  Doc. No. 28.  For the reasons stated below, Theidon's motion is ALLOWED IN PART and DENIED IN PART, and Harvard's motion is DENIED.

II.     HARVARD'S MOTION FOR A PROTECTIVE ORDER

Harvard seeks three measures to protect the confidentiality of certain information used in Theidon's tenure process.  First, Harvard wants to redact the names and identifying information of sixteen scholars from other universities and thirteen members of Harvard's Anthropology department who provided letters to Harvard that evaluated Theidon's scholarship and, in the case of the outside scholars, compared Theidon's achievements to those of other scholars designated by Harvard or the letter writer.  Doc. No. 29 at 1-2. Second, Harvard requests redaction of the names of the scholars to whom Theidon was compared (the "comparands") in the letters provided by outside scholars.  Id.

Third, as is its practice, Harvard convened an *ad hoc* committee to consider Theidon's tenure case which included ten people, three of whom were scholars from other universities and two of whom were Harvard professors from outside the Anthropology department.  Doc. No. 29 at 2, 7.  Harvard seeks to disclose the names of the *ad hoc* committee members on an attorneys' eyes only basis.  Id. at 2.  The identities of these individuals would be shielded from all but attorneys at least through summary judgment. Id.

The protection sought by Harvard is governed by recently amended Fed. R. Civ. P. 26(b)(2)(C), which provides in relevant part that "[o]n motion or on its own, the court must limit the frequency or extent of discovery otherwise allowable by these rules or by local rule if it determines that . . . the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C). The same rule limits discovery to "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Fed. R. Civ. P. 26(c) further provides that a party may seek a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" by "forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters" or by requiring certain confidential information "not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c).

The Court must consider whether each category of information Harvard seeks to protect "warrant[s] conferral of any special consideration" and "the type and kind of protection the law affords." Cusumano v. Microsoft Corp., 162 F.3d 708, 714 (1st Cir. 1998). This process balances Theidon's need for the information at issue against Harvard's "interest in confidentiality and the potential injury to the free flow of information that disclosure portends." Id. at 716.

The Court turns first to the scholars, internal and external, who wrote letters evaluating Theidon's scholarship. Harvard makes a strong argument that the candid assessments offered by the letter writers pursuant to an assurance of confidentiality are crucial to its tenure process. Doc. No. 29 at 8-13; see University of Pa. v. E.E.O.C., 493 U.S. 182, 193 (1990) (stating that the court need not question the "assertion that confidentiality is important to the proper functioning of the peer review process under which many academic institutions operate"). Similarly, the letter writers themselves have in interest in remaining anonymous from all but those people directly involved in the tenure decision. For example, at some point a reviewer might work with the candidate whom she reviewed, or a reviewer may find herself in a position to be evaluated by the candidate, which could result in embarrassment or prejudice should the opinions of the evaluator be viewed by those outside of the tenure decision process. Doc. No. 29 at 10.

Harvard's interests, however, must be balanced against Theidon's need to access evidence supporting her allegations of discrimination and retaliation. See Krolikowsi v. University of Mass., 150 F. Supp. 2d 246, 249 (D. Mass. 2001). Theidon argues that the identities of the letter writers are important to her case in several respects. For example, Theidon intends to compare the credentials of the three external members of the *ad hoc* committee to the credentials of the sixteen external letter writers. She also wants to determine whether the letter writers recommended other candidates for tenure and whether those candidates were ultimately granted tenure. Further, Theidon is interested in whether the President of Harvard or other Harvard representatives contacted the letter writers and to what purpose. And, as with any witness, Theidon seeks to identify any biases among those who evaluated her. Doc No. 38 at 6, 8.

Although Harvard argues that the proposed protective order would be in place only through summary judgment, shielding identifying information about the letter writers, both external and internal, through the discovery process handicaps Theidon's ability to marshall facts that support her claims and raise issues necessitating a trial, important components of both summary judgment and trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986) (requiring non-moving party to "set forth specific facts showing that there is a genuine issue for trial"). As the Supreme Court made clear in University of Pa., there is no privilege against the disclosure of tenure peer review materials. 493 U.S. at 189, 201. Theidon, therefore, is clearly entitled to un-redacted versions of all peer review materials prior to trial.

At this stage of the proceedings and on this set of facts, the Court declines to issue a protective order that permits Harvard to redact the names and identifying information of the internal and external letter writers who evaluated Theidon's candidacy. The information at issue is essential to Theidon's effort to acquire probative evidence, an interest that outweighs Harvard's interest in confidentiality, particularly where Harvard's interest cannot, according to binding precedent, shield the identities of the letter writers at trial. University of Pa., 493 U.S. at 189, 201; Schneider v. Northwestern Univ., 151 F.R.D. 319, 323 (N.D. Ill. 1993) (allowing disclosure of reviewers' identities due in part to University of Pa. decision). Thwarting Theidon's case through discovery and summary judgment by denying her access to evidence possessed by her adversary is tantamount to thwarting her case at trial.

To be clear, the Court denies Harvard's motion for a protective order only to the extent that it seeks to withhold information from Theidon and her counsel. Public

disclosure is not at issue here. The parties agree that the documents and materials that are the focus of Harvard's motion will be subject to a protective order allowing Harvard to designate them confidential and prohibiting their disclosure to the public. Names of individuals whose privacy interests may be affected by this litigation may be referred to in public filings using a letter designation agreed to by the parties.

The Court also denies Harvard's motion for a protective order permitting the redaction of the names and identifying information of the comparands. The comparands have no knowledge that their scholarship was compared to Theidon's work by the external letter writers. Harvard does not state any interest in keeping the identities of the comparands secret from Theidon, aside from the comparands' role in the tenure decision process, certain aspects of which Harvard would prefer to keep confidential. Harvard's interest in obtaining candid assessments from reviewers cannot extend to those unaware that they have been cited and discussed in the tenure process. Moreover, as noted, the identities of the comparands will be shielded from the public. The Court, therefore, permits their disclosure to Theidon.

As for the last category of information in dispute, the Court denies Harvard's request to disclose the identities of the *ad hoc* committee members on an attorneys' eyes basis only. Attorneys' eyes only disclosure is appropriate only in limited circumstances, such as cases involving trade secrets, because it hinders the plaintiff's ability to aid counsel in the review of the evidence and to determine her litigation strategy in light of it. Ragland v. Blue Cross Blue Shield of N.D., No. 1:12-cv-080, 2013 WL 3776495, at * 1 (D.N.D. June 25, 2013); see Sexual Minorities of Uganda v. Lively, No. 3:12-30051-MAP, 2015 WL 4750931, at * 5 (Doc. No. Mass. Aug. 10, 2015) (citing defendant's right to participate

in his defense in denying attorneys' eyes only designation).  Although Harvard would certainly prefer to keep the identities of the *ad hoc* committee members secret from Theidon, it has not demonstrated that it is entitled to confidentiality under the law. Ragland, 2013 WL 3776495, at * 2.

The theory of Theidon's case appears to be that individuals who opposed granting her tenure were purposely chosen to serve on the *ad hoc* committee.  See Doc. No. 38 at 8, 14, 16 (asserting that internal and external letter writers were in Theidon's favor, but the "[a]d [h]oc was stacked").  See Schneider, 151 F.R.D. at 323 (noting that peer reviewers should be identified where their role was integral to plaintiff's argument that she was subjected to more demanding peer review process than were male candidates).

Finally, in this case, Theidon, like many clients, serves as both her counsel's guide to understanding the facts and expert consultant.  To deny her the identities of the witnesses, in this particular case, unduly hampers her ability to assist counsel.  Although the Court sympathizes with the legitimate concerns raised by Harvard, for the reasons stated, the motion for a protective order is denied.

III.    THEIDON'S MOTION TO COMPEL

    A.    De-Duplication of ESI

Harvard proposes using a process to eliminate duplicates from the ESI it has agreed to produce.  The automated de-duplication process eliminates emails determined to be duplicates using each email's hash code, or digital fingerprint.  Doc. No. 33 at 8.  Harvard advocates this process because it "reduce[s] the time and expense of reviewing documents for responsiveness and privilege by eliminating true, exact duplicates and the prospect of reviewing the same document multiple times." Id. at 9.  In addition to the de-duplicated

7

set of emails, Harvard intends to produce a spreadsheet showing metadata for every document and states that it is willing to produce duplicates should the need arise. Id. at 12. Theidon resists Harvard's proposal, insisting that she receive all documents deemed duplicates. Doc. No. 32 at 7. Theidon argues that the metadata fields Harvard seeks to use in identifying duplicates are insufficient, and thus documents that are not true duplicates will be withheld. Doc. No. 41 at 2-3. Theidon also takes issue with the spreadsheet of metadata Harvard intends to produce, contending it is cumbersome and adds unnecessary work. Doc. No. 32 at 7.

Both parties find support for their positions in the rules. Harvard cites Fed. R. Civ. P. 26(b)(2)(C), which instructs a court to limit the "extent of discovery" if it determines that the discovery sought "is unreasonably cumulative or duplicative." Doc. No. 33 at 10. Theidon counters with Fed. R. Civ. P. 34(b)(1)(C), which allows a requesting party to designate the form in which she wants ESI produced. Doc. No. 41 at 1.

The Court concludes that Theidon has not demonstrated that Harvard's proposal is unreasonable. The review and production of duplicate documents is burdensome, and the Local Rules of this District imply that duplicates need not be produced. See Local Rule 26.5(c)(2) (stating that "[a] draft or non-identical copy is a separate document"). Although Theidon argues that the hash tags employed by Harvard eliminate documents that are not true duplicates based on certain metadata fields, the only example she cites is a message flag indicating whether an email was read or unread. Doc. No. 41 at 3. She does not explain, however, how that field could be relevant to her case. Moreover, Harvard has agreed to produce duplicates identified by Theidon as relevant to her case upon her request. In addition, without having seen the spreadsheet of metadata proposed by Harvard, the

Court cannot conclude that it is unduly cumbersome. If Theidon finds that employing the spreadsheet is onerous, she may return to this Court to seek relief. The Court, therefore, denies Theidon's motion to compel with respect to the de-duplicating process.

B. <u>Search for ESI possessed by eight custodians</u>

Theidon moves to compel Harvard to search for responsive ESI possessed by eight custodians to which Harvard objects. Doc. No. 32 at 9. Harvard argues that Theidon's proposed list of custodians is unreasonable because some custodians did not participate in the tenure decision, and some are not Harvard employees or were employees in the past, beyond the relevant time frame. Thus, any ESI possessed by the proposed custodians is irrelevant. Doc. No. 33 at 6-7.

Three custodians – Enseng Ho, Jason Ur, and Ajantha Subramanian -- are potential comparators, *i.e.*, individuals also considered for tenure in the Anthropology department. Doc. No. 41 at 6. Harvard states that it objected to the production of documents relating to any comparators, and Theidon has not moved to compel regarding Harvard's objection. Doc. No. 33 at 15. Theidon does not address Harvard's assertion. At the Court's hearing on this motion, the parties stated that they intended to confer regarding the handling of discovery with respect to comparators. The Court, therefore, denies without prejudice the portion of Theidon's motion addressing these three custodians in order to allow the parties an opportunity to resolve their dispute.

Turning to the remaining custodians at issue, according to Theidon, Stephen Caton is an Anthropology department member who had "interactions and discussions" with a student who complained about discrimination. Doc. No. 41 at 9. Because Theidon presses

9

a retaliation claim premised on her criticism of Harvard's alleged indifference to discrimination charges, the Court concludes that this custodian is relevant.

Another custodian, Jane Menton ("Menton"), is not and was not an employee of Harvard, but that fact alone is not determinative of whether Harvard possesses ESI she generated because she was a contractor hired by Harvard. Theidon seeks ESI from Menton regarding the allocation of faculty office space for the Anthropology Department. D. 41 at 8. However, Theidon has not met her burden of explaining how the allocation of office space is relevant to her claims, and she has not stated another basis to examine Menton's records. The Court, therefore, denies Theidon's motion to compel as to ESI maintained by Menton.

Like Menton, Terry Karl ("Karl") is not a Harvard employee, but was in the past. Harvard asserts that it no longer has ESI generated by Karl. Doc. No. 33 at 14. In that case, Harvard may merely make that response to Theidon.

Theidon seeks ESI from Nitin Nohria ("Nohria"), the Dean of Harvard Business School. Nohria wrote about difficulties experienced by women in securing tenure at Harvard Business School. Doc. No. 41 at 10. Specifically, Theidon argues that Nohria will have information regarding Harvard's knowledge that women have been disadvantaged in the tenure process and of measures that might alleviate those barriers, some of which were implemented by the Business School. Id. Institutional bias in the tenure process and available measures to combat it are relevant to Theidon's claims of gender discrimination.

Finally, Theidon asserts that Harvard should be compelled to produce ESI possessed by Mia Karvonides ("Karvonides"), Harvard's Title IX Coordinator. Id. at 8.

At this early stage of litigation, where Theidon asserts claims of retaliation related to her comments regarding Harvard's compliance with Title IX, Theidon has met her burden to establish the relevance of Karvonides's documents to her case.

IV. CONCLUSION

For the foregoing reasons, the Court ALLOWS IN PART and DENIES IN PART Theidon's motion to compel, Doc. No. 31. The motion is ALLOWED with respect to ESI associated with the custodians other than the comparators and Menton. The remainder of Theidon's motion is DENIED. The Court DENIES Harvard's motion for a protective order, Doc. No. 28.

**So Ordered.**

/s/ Leo T. Sorokin
United States District Judge