UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| KIMBERLY THEIDON, | ) |
| Plaintiff, | ) |
| v. | ) Civ. A. No. 15-cv-10809-LTS |
| HARVARD UNIVERSITY, and the PRESIDENT AND FELLOWS OF HARVARD COLLEGE, | ) |
| Defendants. | ) |

ORDER ON PLAINTIFF'S MOTION FOR PROTECTIVE ORDER (DOC. NO. 135)

May 30, 2017

SOROKIN, J.

On May 3, 2017, the Court ordered Kimberly Theidon to turn over her notes of a meeting with Jorge Dominguez. Doc. No. 129. Thereafter, Theidon filed a Motion for a Protective Order, Doc. No. 135, stating that her only record of the meeting was in correspondence with her counsel. Defendants Harvard University and the President and Fellows of Harvard College (collectively, Harvard) opposed the motion. Doc. No. 140.

The following facts are before the Court. By February, 2013, while Harvard was considering Theidon's application for tenure, Theidon began taking notes of at least some meetings with Harvard officials to create "a paper trail." Doc. No. 140-8 at 2; see Doc. No. 1 at 3. On May 28, 2013, Harvard rejected Theidon's application for tenure. On June 10, 2013, Theidon met with Senior Vice Provost Judith Singer; they discussed the tenure decision. Theidon memorialized her recollection of the meeting in a set of

1

extensive typed notes. Doc. No. 140-6, 140-7. The day of this meeting, Theidon emailed a copy of the notes to another person asking for his thoughts. Several days later, on June 14, she emailed a slightly edited version of the notes to a number of other people. Id.

On July 2, 2013, Theidon met with Dominguez; they discussed the tenure decision. Doc. No. 140-2 at 3. At Theidon's deposition, the following exchange occurred:

> Q. In the course of that meeting, did you tell Professor Dominguez, in words or substance, I do what I like to do?
>
> A. No, I didn't. I remember—I mean, I know when I read that in the documents, I thought, what an odd statement. It's so tepid. First, it would be obstinate, which I'm not, and then the other—I would never say that. It's such a tepid statement. I would say I love what I do. Anyone who knows me, knows I love it.
>
> I never said that to him, nor did I say other things that he ascribes to me in my notes. My notes from that meeting look very different, sir.
>
> Q. Do you have notes for those meetings?
>
> A. Yes, I do. Where he told me not to file a grievance, not to pursue a suit, not to set precedent, to go to Judith Singer, see if they'd forgive my mortgage and solve it all with a handshake.
>
> Q. Can you explain why those notes have not been produced in this litigation?
>
> A. I don't know. Aren't they—I think they must be on my computer that you have. They have to be, I think.
>
> Q. Do you know that you received a document request in this case?
>
> A. Yes. And I thought I produced everything, and I think I had written notes. I know, in going back and thinking of what happened, I found notes, I believe. They must be on the computer. I don't know. I don't have that computer anymore. I thought I had produced everything. If I overlooked that, I apologize.
>
> Q. What kind of notes were they?
>
> A. I remember after I left there, taking some notes on it. I wanted to remember what he said to me, and I had reached out to him because he had told me how great my work was in fall of that year. He had given me some advice on the research statement, because I couldn't get anyone to explain to me what the tenure research statement should look like. And he told me my

2

> great, my scholarly contributions, et cetera, so he seemed like someone that I should go back to after the tenure denial, because I was trying to figure out for myself what had happened.
>
> So I know I have some notes from that meeting.
>
> Q. Are they notes that you took at the meeting?
>
> A. No, I would have taken them afterwards. I wasn't writing down at the time. I would have gone back and I would have written them down somewhere.
>
> Q. Okay. And did you write them down in handwriting, or did you type the notes?
>
> A. I don't recall, because in preparing everything, even if it had been handwritten, I would have probably tried to enter something in some type of typewritten format.
>
> Q. And do you have a place where you keep handwritten notes, like the ones that you may have taken during your meeting with Professor Dominquez?
>
> A. I don't think so. Because I would have probably put them into typewritten form. I might. I don't think so, though, in terms of handwritten, I apologize, I'm sorry, as I clarify.

Doc. No. 140-2 at 3–6.[1] In her affidavit in support of her Motion for a Protective Order, Theidon stated that "I did not take notes during the meeting with Mr. Dominguez and to my knowledge, no notes of the meeting exist." Doc. No. 135-2 at 1.

According to Theidon's affidavit, "[t]he only documentation I have of my meeting with Mr. Dominguez is a quarter-page summary contained in the 17 page timeline document I created in preparation of litigation for my counsel." Doc. No. 135-2 at 1. Theidon further notes "After my deposition, I searched through my notes and emails and realized that the only documentation of the meeting is contained in my notes to my counsel in pursuit of legal advice." Id. at 1–2. Theidon states that she "created a document

---

[1] Theidon filed the same deposition transcript under seal. Doc. No. 135-4. Harvard attached the transcript to its Opposition unsealed. Doc. No. 140-2. The unsealed transcript has thus been on the docket since May 18 without any argument from Theidon that the Court should seal the deposition transcript excerpt.

of her experiences working with Defendant for the purpose of seeking legal advice and in anticipation of litigation against Defendant regarding her tenure denial. When she created the document, she was represented by counsel in this case and at the time, marked the document 'Document Protected under Attorney-Client Privilege.'" Doc. No. 135-1 at 1.

Due to Theidon's post-meeting note taking practices, the importance of the meeting with Dominguez (someone Theidon described as a helpful supporter during the application process), Theidon's testimony at her deposition that she remembered taking notes of her meeting with Dominguez "after [she] left," Doc. No. 140-2 at 5. and the careful wording of her affidavit which denies the current existence, but not the creation of notes, the Court finds that Theidon took notes after the meeting and that the notes are no longer in her possession.[2]

Discovery of work product is governed by Fed. R. Civ. P. 26(b)(3)(A): "Ordinarily a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative . . . . But . . . those materials may be discovered if: (i) they are otherwise discoverable under Rule 26(b)(1); and (ii) the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." The party seeking privilege protection bears the burden to show the privilege applies. Tyler v. Suffolk Cnty., 256 F.R.D. 34, 38 (D. Mass. 2009). Theidon has not established that either the attorney-client or work product privilege applies to the now no longer existing notes of her meeting with Dominguez. She has not shown that the

---

[2] The Court makes no finding about the manner in which or the reason why the notes are no longer in Theidon's possession, custody, or control.

notes were prepared with a primary motivating purpose to aid in possible future litigation. See Sharp v. Gov't of V.I., 77 F. App'x 82, 85 (3d Cir. 2003) ("Litigation need not be imminent . . . as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation." (alteration in original)) (quoting United States v. Rockwell, 897 F.2d 1255, 1266 (3d Cir. 1990)); In re Grand Jury Subpoena, 220 F.R.D. 130, 147 (D. Mass. 2004) (adopting the Third Circuit standard). Theidon has met her burden to establish that the quarter-page summary contained within the seventeen page chronology was prepared in anticipation of litigation and thus is protected by the work product privilege. Harvard nonetheless seeks the quarter page under the exception to the work product privilege for documents for which it has a substantial need.[3] Fed. R. Civ. P. 26(b)(3)(A).

The discussion with Dominguez is relevant to Theidon's claims. Theidon brought up the fact that she had taken notes at her deposition, apparently to bolster her account of what was said in the meeting, and the underlying fact of the meeting and what happened during the meeting is discoverable. Additionally, "[a] party may have substantial need for unique information, such as statements taken contemporaneously in time to an event that contain immediate impressions of facts." Clark v. Edison, 2010 WL 3245428, at *2 (D. Mass. Aug. 16, 2010) (citing Fromson v. Anitec Printing Plates, Inc., 152 F.R.D. 2, 4 (D.

---

[3] Theidon's filing conflates work product protection with attorney-client privilege. The work product privilege protects the document Theidon created for her counsel, Fed. R. Civ. P. 26(b)(3), while the attorney-client privilege protects the communication with counsel. Of course, the information—what happened at the meeting with Dominguez—is not privileged at all. To the extent that Theidon is claiming attorney-client privilege over the notes, the Court rejects her argument. The burden to show that the privilege applies is on Theidon and she has not met that burden. United States v. Windsor Capital Corp., 524 F. Supp. 2d 74, 81 (D. Mass. 2007).

Mass. 1993)). The notes, taken directly after the meeting, are a contemporaneous account. With the notes unavailable, Harvard has met the standard to show substantial need for the later-created, but still much closer in time, quarter-page summary based on the notes.

Because the quarter-page summary was part of a communication to Theidon's attorney, Theidon shall first produce, within seven days, the summary (not the full timeline document) ex parte under seal for the Court to review. After review, the Court will disclose the document to Harvard, unless upon review the Court perceives a possible privilege issue.

The parties within seven days shall file redacted copies of their respective memos. The Motion for a Protective Order, Doc. No. 135, is DENIED.

/s/ Leo T. Sorokin
United States District Judge