# **Exhibit 2**

to Statement of Material Undisputed Facts

*F. Contract*



# STANFORD UNIVERSITY PRESS
1450 Page Mill Road, Palo Alto, Ca 94304-1124   Telephone 650-723-9434   Telefax 650-725-3457

AGREEMENT made this 22nd day of January 2008, between

## KIMBERLY THEIDON,

(hereinafter called the Author), and THE BOARD OF TRUSTEES OF THE LELAND STANFORD JUNIOR UNIVERSITY, owning and operating the STANFORD UNIVERSITY PRESS, (hereinafter called the Publisher), concerning a WORK now entitled,

INTIMATE ENEMIES: VIOLENCE AND RECONCILIATION IN PERU, (hereinafter referred to as the WORK).

*The Author and the Publisher agree that:*

**1. Grant of Rights.** By this Agreement the Author exclusively grants and assigns to the Publisher the entire copyright in the WORK, and each and every right in the WORK, including, without limitation, the exclusive right to reproduce, publish, and distribute the WORK, in whole and in part, in any language, any form now in existence or invented in the future and in any way throughout the world.

**2. Documents and Releases.** The Author shall take, on request of the Publisher, all necessary steps and execute and deliver all documents necessary for obtaining or registering copyright of the WORK, in the United States and in other countries, and of any revisions or new editions thereof. The Author shall execute and deliver to the Publisher such licenses, assignments, work-made-for-hire releases, and other documents as may be necessary to assure it and its representatives, successors, or assigns the exclusive right to reproduce, publish, sell, and otherwise exploit every right of copyright in said WORK, and any revision thereof, during the continuance of any such copyrights as the law allows.

**3. Author's Representation and Warranties:** The Author represents and warrants that: the Author is the sole proprietor of the WORK and has full power to enter into and perform this Agreement and to make the grants and assignments set forth herein; the WORK as submitted is innocent and without matter that is libelous or injurious or otherwise actionable or that will infringe any copyright, proprietary right at common law, or right of privacy or any other right of any party; the WORK has not been published, in whole or in part, except as heretofore communicated to the Publisher in writing; the WORK has not been registered with the Copyright Office of the United States in any form, except as heretofore communicated to the Publisher in writing; and if it should be necessary to incorporate in the WORK any material, illustrations, or text that has been published or is the property of others, the Author will incorporate such material only with the knowledge and consent of the Publisher and in accordance with paragraph 7, below. Any advice, decision, or action from the Publisher in relation with the above shall not affect or limit the Author's warranties.



1

Theidon, Kim
#6053

**4. Liabilities and Indemnities:** The Author and the Author's legal representatives will indemnify, defend and hold harmless the Publisher, its subsidiaries and affiliates, officers, directors, employees, partners, associates, agents and representatives from all costs, losses, expenses (including reasonable costs of defense), settlements, liabilities or damages arising out of, or for the purpose of resolving, or avoiding, any claim, suit, proceeding, or demand (claim) arising from the WORK made against the Publisher which if sustained, would constitute a breach of the warranties and representations set out in paragraph 3. The Publisher shall have the right to defend any such claim with counsel of Publisher's selection and the Author shall cooperate in such defense. The Publisher may, after consultation with the Author, settle any such claim made against the Publisher on terms the Publisher deems advisable and the Author will be liable for any amount the Publisher agrees to pay in settlement of any such claim. In the event of such claim, the Publisher may withhold any sums due to the Author under this or any other Agreement between the Author and the Publisher. If the Publisher does so, it shall notify the Author without delay. The warranties and indemnities set forth shall survive the termination of this Agreement.

**5. Manuscript.**
a) *Length:*
The manuscript shall not exceed *932,800* characters in length (including blank spaces) and shall not include more than *0* table(s), *0* figure(s), *0* halftone(s), and *0* map(s) (hereinafter called the illustrative material).
b) *Delivery:*
The Author shall deliver to the Publisher on or before *June 1, 2008* two copies of a letter-quality manuscript, along with disks, prepared according to the Publisher's specifications, complete except for the index, and accompanied by all the illustrative material to be included in the WORK.
The manuscript is to be provided in a form and style acceptable to the Publisher, and the illustrative material chosen for the WORK is to be provided in a format suitable for reproduction.
If the Author is unwilling or unable to provide the manuscript, or illustrative material in a form suitable to the Publisher, the work of readying the material will be done by the Publisher at the Author's expense and paid for by the Author within 60 days of publication.
c) *Late Delivery:*
If the Author does not submit the manuscript on or before the due date and has not negotiated a mutually agreed extension with the Publisher, the Publisher shall have the exclusive right but not the obligation to publish the WORK. In such case, the Author shall submit the final manuscript to the Publisher upon completion and the Publisher shall have 90 days from the date of receipt of the final manuscript to determine, in its sole discretion, whether it will publish the WORK or terminate the Agreement by giving written notice to the Author.
d) If the Author delivers said manuscript by the date specified, but the manuscript is not acceptable to the Publisher in content, the Publisher may at any subsequent date of its choosing terminate this Agreement by giving written notice to the Author.
e) If, in the Publisher's judgment, a satisfactory and timely revision is feasible, the Publisher has the right but not the obligation to request that the Author makes the

necessary changes. If the Author doesn't make the changes within the deadline set by the Publisher or if, notwithstanding the changes, the manuscript is not, in the Publisher's judgment, complete and satisfactory, the Publisher may terminate the Agreement by giving written notice to the Author.

f) Upon termination of the Agreement, the Author shall repay to the Publisher within 30 days of such notice any advance payment previously made by it to the Author or on the Author's instructions to another party.

**6. Index.** If in the opinion of the Publisher an index is necessary, it shall be supplied by the Author. If the Author is unwilling or unable to provide an index in a form suitable to the Publisher or by the due date established by the Publisher, the work of readying the index will by done by the Publisher at the Author's expense and paid for by the Author within 60 days of publication.

**7. Use of Copyrighted Material.** The Author shall obtain promptly and at the Author's own expense written permissions, in a form satisfactory to the Publisher to quote from or reproduce copyrighted material or other material that is the property of others, for all rights granted by the Author, and to transmit such permissions or releases in writing to the Publisher with the final manuscript. Any obligation associated with permissions such as payment of fees or free copies will be the responsibility of the Author.

**8. Proofreading.** The Author shall perform with all reasonable diligence the usual duties of authors, including the return within the time specified to the Publisher of all proofs sent for correction, with all corrections clearly marked; and to return with the last page proof copy for the index, if there is one, in form and style satisfactory to the Publisher.

**9. Author's Alterations.** If the cost of corrections and alterations in the proofs (other than those resulting from printer's errors) should exceed 15% of the cost of typesetting, the Author shall bear the excess and the cost will be paid for by the Author within 60 days of publication.

**10. Revisions.** The Author shall supply any new matter necessary from time to time to keep the WORK up to date and to revise the first and subsequent editions of the WORK, as may be desired by the Publisher. If for any reason the Author does not agree to supply such new matter or revise the WORK, or fails to do so to the Publisher's satisfaction after a reasonable time has been given, the Publisher may engage some competent person to do so, charging the cost for these services to the Author against the royalties to be earned by the revised edition.

**11. Editing.** The Publisher shall have the right to edit the WORK for style, usage, and felicity in accordance with its usual practice, provided that such editing or alteration shall not materially change the meaning of the WORK.

**12. Publication.** The Publisher shall have the right:
a) to publish the WORK in one or several volumes, and in such style and under such imprints as it deems appropriate;

b) to decide all publishing details including title, print run, pricing and discounts, date of publication, format, size, cover or/and jacket and text design, typesetting, paper to be used, and like details;
c) to determine the methods and means of advertising, promoting, distributing and selling the work, as well as the number and destination of free copies.

**13. Selections for Publicity Purposes.** The Publisher may publish or permit others to publish or broadcast without charge and without royalty such selections from the WORK, as it deems proper in the interests of the WORK.

**14. Special or Service Editions.** The Publisher may license publication of the WORK without charge and without royalty in Braille, large type or by any other method primarily designed for the physically handicapped as it deems advisable.

**15. Author's Name and Likeness.** The Publisher may use Author's name, likeness, and /or biographical data on the Publisher's edition of the WORK and in the Publisher's advertising and promotion of the WORK and may extend these rights to any party to which the Publisher grants any rights to the WORK.

**16. Competing Works.** The Author shall refrain from preparing or causing to publish in the Author's name or otherwise, without the Publisher's written consent, any similar work or anything that may injure the sale of said WORK.
After signing this Agreement, the Author shall not, without the Publisher's prior written consent, publish or permit others to publish the WORK or a portion of the WORK, or any other version, revision, or derivative works based on the WORK, in any media now in existence or invented in the future.

**17. Copy of Manuscript.** The Author shall retain a copy of the manuscript of the WORK, including any illustrative material. Unless return of any or all material is requested in writing by the Author prior to publication of the work, the Publisher may, after publication, dispose of the original manuscript, illustrative material and proofs. The Publisher shall not be responsible for loss of or damage to any property of the Author after publication of the work.

**18. Accounting.** The Publisher shall render annual accounts and make payments to the Author on net sales as of August 31 of each year, on or before December 1 of each year. If the balance due to the Author for any royalty period is less than $10, no payment is due until the next royalty period at the end of which the cumulative balance has reached $10.

**19. Copyright Registration.**
(a) The Publisher shall register the copyright of the published WORK in the name of the Publisher in the United States and take all reasonable steps to protect the rights of the Author and the Publisher under the copyright law of the United States.
(b) If the copyright in the WORK is infringed, the Publisher and the Author may jointly sue or otherwise take steps to protect the copyright, sharing both the expenses of the action and the recovered royalties and damages equally; or, if one party does not join in the action, the other may proceed at its own expense and retain all damages and recovered

4

royalties, except that if the Publisher proceeds alone the Author will receive the Author's contractual share of recovered royalties, less the pro-rata share of the costs of the action.

**20. Author's Copies.** The Publisher shall furnish to the Author on publication *3* copies of the first printing of the Publisher's hardbound edition of the WORK free of charge, and, if the Publisher has decided to publish a paperback edition, *12* copies of the first printing of the Publisher's paperback edition of the WORK free of charge and any further copies of the WORK desired by the Author. but not for resale, at a discount from the list price of 40%.

**21. Royalties.** The Publisher shall pay the following royalty on each edition of the WORK to the Author:
(a) On sales of the hardbound edition within the United States, 10% of the net receipts after the sale of 500 copies. On sales outside the United States, one-half these royalties.
(b) On sales in the United States of paperback editions issued by the Publisher, 7% of the net receipts up to and including the sale of 5,000 copies, 8% of the net receipts on sales after that. On sales outside the United States, one-half these royalties.
(c) On sales, licenses, or assignment of any electronic version of the entire WORK or of any electronic rights, rights of storage and retrieval by electronic methods of the entire WORK, 10% of the net receipts.
(d) On copies sold in bulk to a recognized book club, 10% of the net receipts.
(e) On sales of sheet stock or of bound books to a foreign publisher at a price inclusive of royalty, 10% of the net receipts.
(f) On sales of print-on-demand copies by third party aggregators, 5% of the net receipts.
(g) On copies sold as remainders or in special sales at less than 50% of the suggested list price, 10% of the net receipts, except that on copies sold at less than the manufacturing cost (defined for the purposes of this section as 27.5% of the suggested list price), no royalty.
(h) On copies lost or destroyed or damaged, or on copies that the Publisher may give away in the interest of the WORK, no royalty.

**22. Subsidiary Rights and Subsidiary Rights Royalties:** The grant in paragraph 1 is a grant of all rights to the WORK, including but not limited to the following exclusive rights in and to the WORK which the Publisher may exercise, license, assign and otherwise dispose of to the extent and in such manner and styles as the Publisher deems appropriate in all languages, forms, media, and means of distribution now in existence or invented in the future, throughout the world:
(a) To publish the WORK or part of it in newspaper or periodicals before and after publication of the WORK; to publish or license the WORK or part of it in custom books; to dispose of performance, motion picture, television, radio, cable-transmission, dramatic, public reading, non-dramatic and commercial rights; to license English language editions outside the US; to license paperback editions to another publisher; to license translation rights; to license book club rights, paperbound and hardbound reprint editions; to grant permission to use portions of the WORK in other books or any other media, including publication in anthologies; to grant portion of the Work for classroom use; to adapt the WORK, condense, abridge the WORK; to make audio and visual recording of the WORK by any means; the right to sound recording; to retrieve, distribute, transmit, display the

5

WORK or part of it by any means electronic or otherwise; rights of use of the WORK in whole or in part in any form, in any way, and in any media.

(b) The Publisher shall pay to the Author, 50% of the net receipts from any grant of rights to the WORK made to another party with the exception that for the sales, licenses, or assignment of any electronic version of the entire WORK or of any electronic rights, rights of storage and retrieval by electronic methods of the entire WORK, the royalty rate is as specified in clause 21(c).

**23. Reversion of Rights.** The WORK is deemed in print as long as it is distributed or made available for sale in any format including but not limited to print and electronic editions or by any means of distribution, now in existence or invented in the future. If the Publisher fails to keep the WORK in print and the annual royalties or revenues deriving from licenses for any use of the WORK, fall below $100 a year for two successive years, the Author may in writing request that the Publisher distribute or make the WORK available for sale, and if the Publisher within 60 days does not notify the author in writing that it will do so, or having so agreed does not distribute or make the Work available for sale within six months, then this Agreement shall terminate and all rights granted to the Publisher shall thereupon automatically revert to the Author, except that the Publisher shall continue to receive its share of the proceeds of licenses that have theretofore been granted, and the Author shall be paid his or her share directly by the licensee.

**24. Option on Other Property on Reversion.** Upon the termination of this Agreement, the Author may, by giving written notice to the Publisher within 60 days of termination, purchase from the Publisher the following materials and property interests: bound copies at 25% of the suggested list price; sheet stock at 10% of the suggested list price; plates, engravings, standing type, offset negatives, and electronic files, if any, at 10% of their original cost, including cost of composition; and the right to photograph or otherwise to reproduce the Publisher's typesetting at the price of $1.00 per page. Otherwise the Publisher may dispose of these materials, subject only to the royalty provisions of this Agreement.

**25. Successors and Assigns.** This Agreement shall be binding on the parties thereto, and upon their heirs, executors, administrators, successors, and assigns; and neither party may assign its interest therein, except as a whole and with written notice to the other party, except that the Publisher may not, without written consent of the Author, assign, license, or otherwise transfer to others its initial obligation to publish.

**26.** This Agreement shall not be subject to change or modification in whole or in part, unless in writing signed by the Publisher and the Author. No waiver of any term or condition in this Agreement or of any part thereof, shall be deemed a waiver of any other term or condition of this Agreement or of any breach of this Agreement or any part thereof.

**27. Governing Law.** This Agreement shall be interpreted and construed according to, and governed by, the laws of the State of California. The federal and state courts located

in the State of California, shall have jurisdiction to hear any dispute under this Agreement.

**28. Advance Contract.** This Agreement is contingent on the approval of the WORK by the Editorial Board of Stanford University Press.

In witness whereof, the parties hereto have executed this instrument in duplicate as of the day and year first above written.

THE BOARD OF TRUSTEES OF THE
LELAND STANFORD JR. UNIVERSITY

By: _____
Director, Stanford University Press

_Kimberly Theid_
AUTHOR
Social Security Number:

7